IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| JANE DOE, | ) |
| | ) |
|     Plaintiff, | ) |
| | )    No. 2:18-cv-02032 MSN-cgc |
| v. | ) |
| | ) |
| THE UNIVERSITY OF MEMPHIS, | ) |
| | ) |
|     Defendant. | ) |

_____

**DEFENDANT UNIVERSITY OF MEMPHIS' MEMORANDUM
IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE,
MOTION FOR SUMMARY JUDGMENT**
_____

Defendant University of Memphis (the "University"), pursuant to Fed. R. Civ. P. 12(b)(6) and 56, by and through the Office of the Tennessee Attorney General, submits this memorandum in support of its motion to dismiss or, in the alternative, motion for summary judgment as to the Second Amended Complaint.[1]

## INTRODUCTION

This is a Title IX case under 20 U.S.C. § 1681, wherein Plaintiff Jane Doe attempts to impose liability against the University of Memphis as a funding recipient for the University's alleged failure to prevent and respond to sexual harassment that occurred off-campus. (Second

---

[1] On February 6, 2019, Defendant University previously filed the same motion for summary judgment with respect to the First Amended Complaint (ECF No. 31). Plaintiff moved for an extension of time to respond to Defendant's motion for summary judgment and was granted until and including March 21, 2019. (ECF No. 38). Plaintiff recently sought to amend her complaint which Defendant did not oppose (ECF No. 43). Plaintiff then filed the Second Amended Complaint (ECF No. 45), which rendered moot the initial motion for summary judgment. Defendant is renewing the previous summary judgment motion with this motion.

Amended Complaint, ECF No. 45.)  The University is a public university operated by the State of Tennessee.  (*Id.,* ¶ 3.)  Plaintiff, a female student at the University, alleges that she was sexually assaulted on two separate occasions by two different individuals at off-campus locations.  Her claims challenge the adequacy of the University's response to those sexual assaults.  (*Id.,* ¶¶ 20-186.)  Plaintiff also challenges the adequacy of the University's response to previous sexual assault reports that do not involve Plaintiff or her alleged perpetrators.  (*Id.,* ¶¶ 187-97.)

This threshold motion to dismiss or, in the alternative, motion for summary judgment focuses exclusively on the ***off-campus location and context*** of the two alleged sexual assaults.  The University does not have a legal duty under Title IX to address off-campus assaults in private settings involving its students.  For liability to attach, the alleged off-campus assault must occur within an "education program or activity" operated by the University.  Under Title IX and applicable case law, Plaintiff cannot demonstrate that the University had substantial control over the context of the alleged off-campus sexual assaults of Plaintiff that occurred at a private residence and private apartment complex respectively and did not involve an education program or activity operated by the University.  As a result, the Court should dismiss Plaintiff's claims or, in the alternative, grant summary judgment in the University's favor.

## UNDISPUTED MATERIAL FACTS

The University submits the following undisputed material facts for purposes of this motion to dismiss or, in the alternative, motion for summary judgment:

1. Plaintiff Jane Doe made complaints to the University in which Plaintiff alleged that she had been sexually assaulted by Nicholas Wayman and Raymond Tate.  Affidavit of Kenneth Anderson ("Anderson Affidavit"), ¶¶ 3-4; Plaintiff's Second Amended Complaint for

Violation of Title IX of the Civil Rights Act of 1964 ("Second Amended Complaint"), ¶¶ 47, 88 (ECF No. 43).

2. Plaintiff, Mr. Wayman, and Mr. Tate were students at the University at the time of the alleged sexual assaults. Anderson Affidavit, ¶ 3; Second Amended Complaint, ¶¶ 36, 81.

3. Plaintiff alleged that she was sexually assaulted without her consent by Nicholas Wayman on April 1, 2017. Anderson Affidavit, ¶ 5; Second Amended Complaint, ¶¶ 36-47.

4. Plaintiff alleged that on the evening of March 31, 2017, into the early morning hours of April 1, 2017, she attended multiple, off-campus fraternity parties hosted by Sigma Alpha Epsilon and Sigma Chi fraternities. Anderson Affidavit, ¶ 6; Second Amended Complaint, ¶ 22.

5. Plaintiff alleged that she and two of her female friends began drinking champagne at the Sigma Alpha Epsilon party at 11:00 p.m. Anderson Affidavit, ¶ 6.

6. Plaintiff alleged that she and one of her female friends arrived at the Sigma Chi fraternity party at around 11:30 p.m. Anderson Affidavit, ¶ 7.

7. Plaintiff alleged that, while at the Sigma Chi party, she drank alcohol and smoked marijuana. Plaintiff drank her own champagne and a portion of a Sigma Chi member's beer. *Id.*, ¶ 8.

8. At the time of the alleged April 1, 2017 sexual assault, Mr. Wayman was not a member of Sigma Chi fraternity but was a member of Lambda Chi Alpha fraternity. *Id.*, ¶ 9.

9. Plaintiff alleged that she and Mr. Wayman had limited interactions during the Sigma Chi fraternity party. *Id.*, ¶ 10.

10. Plaintiff alleged that Mr. Wayman did not give her anything to drink during the Sigma Chi fraternity party. *Id.*

3

11. Plaintiff alleged that she voluntarily left the Sigma Chi fraternity party when the party was shut down by police at approximately 1:15 a.m. *Id.*, ¶ 11; Second Amended Complaint, ¶ 35.

12. Plaintiff alleged that, after leaving the party at approximately 1:15 a.m., she walked back to her car with her friend. Anderson Affidavit, ¶ 12.

13. According to Plaintiff, when she got to her car, she and her female friend snorted Plaintiff's cocaine as a "pick me up" because Plaintiff felt tired. *Id.*

14. Plaintiff alleged that, after snorting cocaine in her car with her friend, she then drove her friend about a block or two away (near Southern Avenue) to drop the friend off so that the friend could spend the night with other friends. *Id.*, ¶ 13.

15. Plaintiff alleged that she was going to drive home but realized that she could not because of her intoxicated condition. *Id.*, ¶ 14.

16. Plaintiff alleged that, because she was unable to drive home in her condition, she parked in the Southern Avenue Parking lot across the train tracks from campus and changed her clothes in her car to get more comfortable. *Id.*, ¶ 15.

17. Plaintiff alleged that she and Mr. Wayman began communicating on Snapchat. Plaintiff could not recall if she contacted Mr. Wayman first. *Id.*, ¶ 16.

18. Plaintiff alleged that she asked Mr. Wayman to pick her up from her car. *Id.*

19. Mr. Wayman arrived at Plaintiff's car in the Southern Avenue Parking lot at approximately 1:55 a.m. on April 1, 2017. *Id.*

20. Plaintiff alleged that she asked Mr. Wayman to take her home to Mississippi; however, Mr. Wayman refused and offered instead to drive her home with him to his parent's

home in Arlington, Tennessee. Plaintiff accepted the offer before they left the parking lot. *Id.*, ¶ 17.

21. Plaintiff alleged that she had previously been to Mr. Wayman's parents' home and spent the night in late 2016. Mr. Wayman's parents had not been home, and Plaintiff and Mr. Wayman had spent the night in his parents' bedroom together. Plaintiff alleged that nothing happened during that prior stay and this made her believe it would be safe to spend the night again with Mr. Wayman. *Id.*, ¶ 18.

22. Plaintiff alleged that she and Mr. Wayman arrived at his parents' home at 6080 Armistead Street in Arlington, Tennessee, at around 2:30 a.m. *Id.*, ¶ 19.

23. Plaintiff alleged that Mr. Wayman sexually assaulted her after they arrived at his parents' home in Arlington, Tennessee. *Id.*

24. Mr. Wayman lists 6080 Armistead Street in Arlington, Tennessee as his home address in University records. *Id.*, ¶ 20.

25. At the time of the alleged April 1, 2017 sexual assault, the University did not own, possess, lease, operate, manage, or control the premises at 6080 Armistead Street in Arlington, Tennessee. *Id.*, ¶ 21; Second Amended Complaint, ¶ 85 n.2.

26. The home located at 6080 Armistead Street in Arlington, Tennessee is owned by Gisella B. Gaylor and is a private residence. Anderson Affidavit, ¶ 22 (Ex. A); Second Amended Complaint, ¶ 85 n.2.

27. Plaintiff alleged that in the early morning hours of April 21, 2017, she was sexually assaulted without her consent by Raymond Tate. Anderson Affidavit, ¶ 23; Second Amended Complaint, ¶¶ 84-88.

28. Plaintiff alleged that on the night of April 20, 2017, she and a female friend went to Newby's, a restaurant and bar located on the Highland Strip near the University campus. Anderson Affidavit, ¶ 24; Second Amended Complaint, ¶¶ 79-80.

29. On the night of April 20, 2017, the University chapter of Lambda Chi Alpha fraternity hosted a fundraising event at Newby's. Anderson Affidavit, ¶ 25; Second Amended Complaint, ¶ 79.

30. Plaintiff alleged that she and her friend met with Mr. Tate at Newby's on the night of April 20, 2017. Anderson Affidavit, ¶ 26; Second Amended Complaint, ¶¶ 80-81.

31. Mr. Tate is a not a member of Lambda Chi Alpha fraternity or any other fraternity at the University of Memphis. Anderson Affidavit, ¶ 27.

32. Plaintiff alleged that she and her friend voluntarily left Newby's and asked Mr. Tate to walk them home. *Id.*, ¶ 28; Second Amended Complaint, ¶ 83.

33. At the time, Plaintiff was staying with her friend as a guest at the Gather on Southern, an off-campus apartment complex located at 3655 Southern Avenue in Memphis, Tennessee. *Id.*, ¶ 29.

34. Plaintiff alleged that her friend agreed to let Mr. Tate sleep on the couch at the friend's off-campus apartment so that Mr. Tate would not have to drive home. *Id.*, ¶ 30.

35. Plaintiff alleged that, along the way to the off-campus apartment, Plaintiff's friend went to her boyfriend's apartment and spent the night there rather than at her own Gather on Southern apartment. *Id.*, ¶ 31.

36. Plaintiff alleged that she and Mr. Tate went on to the Gather on Southern off-campus apartment where Mr. Tate subsequently sexually assaulted her in the early morning hours of April 21, 2017. *Id.*, ¶ 32.

6

37. At the time of the alleged April 21, 2017 assault, the University did not own, possess, lease, operate, manage, or control the Gather on Southern apartments or the premises with addresses of 3559, 3641, 3655 and 3665 on Southern Avenue in Memphis, Tennessee. *Id.*, ¶ 33; Second Amended Complaint, ¶ 85 n.2.

38. At the time of the alleged April 21, 2017 assault, the Gather on Southern apartments on Southern Avenue with related addresses of 3559, 3641, 3655, and 3665 on Southern Avenue in Memphis, Tennessee, were owned by RDC Fund VI Memphis, LLC. These apartments were a residential development of Rael Development Group, a California-based development company, and were managed by Cardinal Group Management. Anderson Affidavit, ¶ 34 (Ex. B); Second Amended Complaint, ¶ 85 n.2.

## LAW AND ARGUMENT

**I.   Plaintiff's Claims Should Be Dismissed, Or the University Be Granted Summary Judgment Because the University Did Not Have Substantial Control Over the Context of the Alleged Sexual Assaults and Therefore Cannot Be Liable to Plaintiff Under Title IX.**

    **A.   Legal Standard**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) allows a defendant to test the legal sufficiency of a complaint without being subject to discovery. *See Yuhasz v. Brush Wellman, Inc.,* 341 F.3d 559, 566 (6th Cir. 2003). In evaluating a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept its factual allegations as true, and draw reasonable inferences in favorable of the plaintiff. *See Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). The court will not, however, accept conclusions of law or unwarranted inferences cast in the form of factual allegations. *See Gregory v. Shelby County,* 220 F.3d 433, 446 (6th Cir. 2000).

In order to survive a motion to dismiss, a complaint must provide the grounds of the entitlement to relief, which requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action. *See Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citation omitted); *see Association of Cleveland Fire Fighters v. City of Cleveland,* No. 06–3823, 2007 WL 2768285, at *2 (6th Cir. Sept.25, 2007) (recognizing that the Supreme Court "disavowed the oft-quoted Rule 12(b)(6) standard of *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S. Ct. 99, 2 L.Ed.2d 80 (1957)"). Accordingly, the claims set forth in a complaint must be plausible, rather than conceivable.

Defendant has separately moved in the alternative for summary judgment. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.'" *Olinger v. Corporation of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated differently, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co.,* 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case."

8

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts demonstrating the existence of a genuine issue for trial. Fed. R. Civ. P. 56; *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

When applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, the Court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). Rather, "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *Id.*

### B. The Alleged Off-Campus Assaults Did Not Occur Within an Education Program or Activity Operated by the University.

Title IX of the Education Amendments of 1972 prohibits a recipient receiving federal financial assistance from subjecting persons in the United States to discrimination on the basis of sex "under any education program or activity." 20 U.S.C. § 1681(a). Title IX defines "program or activity" as "all of the operations of" a recipient. *See* 20 U.S.C. 1687. An "education program or activity" includes "any academic, extracurricular, research, [or] occupational training." 34 CFR § 106.31. *See also Doe v. Brown Univ.*, 896 F.3d 127, 132 n.6 (1st Cir. 2018) ("an institution's education program or activity" may include "university libraries, computer labs, and vocational resources . . . campus tours, public lectures, sporting events, and other activities at

9

covered institutions"). Whether conduct occurs within a recipient's education program or activity does not necessarily depend on the geographic location of an incident (e.g., on a recipient's campus versus off of a recipient's campus). *See, e.g., Rost ex rel. K.C. v. Steamboat Springs RE-2 Sch. Dist.*, 511 F.3d 1114, 1121 n.1 (10th Cir. 2008) ("We do not suggest that harassment occurring off school grounds cannot as a matter of law create liability under Title IX.").

In determining whether a sexual harassment incident occurred within a recipient's program or activity, courts have examined factors such as whether the conduct occurred in a location or in a context where the recipient owned the premises; exercised oversight, supervision, or discipline; or funded, sponsored, promoted, or endorsed the event or circumstance. *See, e.g.*, *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 646 (1999) (holding that a public university will only be liable for situations in which it "exercises substantial control over both the harasser and the context in which the known harassment occurs."; "Where, as here, the misconduct occurs during school hours and on school grounds—the bulk of G.F.'s misconduct, in fact, took place in the classroom—the misconduct is taking place 'under' an 'operation' of the funding recipient."); *Roe v. St. Louis Univ.*, 746 F.3d 874, 884 (8th Cir. 2014) (alleged sexual assault by fraternity pledge at party at off-campus apartment where two other fraternity members lived; "The Supreme Court has made it clear, however, that to be liable for deliberate indifference under Title IX, a University must have had control over the situation in which the harassment or rape occurs. . . . On the facts of this case there was no evidence that the University had control over the student conduct at the off campus party."); *Ostrander v. Duggan*, 341 F.3d 745, 748-51 (8th Cir. 2003) (alleged sexual assault at an off-campus house leased to eleven fraternity members immediately adjacent to campus; court affirmed judgment as a matter of law on ground that sexual assault did not occur within a university education program or activity; "the evidence does not demonstrate

10

[the fraternity] policed or in any way controlled the [property], legally or factually."; "The record is clear that [the university] did not own, possess, or control the [leased house]"); *Weckhorst v. Kansas State Univ.*, 241 F. Supp. 3d 1154, 1180-83 (D. Kan. 2017) (holding that university did not have substantial control over context of alleged sexual assault of student by another student at private off-campus apartment, and not in relation to any university event; "The Court finds that the proposed joinder of Ms. Stroup would be futile. First, with regard to her proposed Title IX claim, Ms. Stroup does not allege plausible facts that the sexual assault at issue occurred within a 'program or activity' of KSU. Unlike the alleged assaults of Plaintiff [Weckhorst], which occurred at a fraternity event and in a fraternity house, the alleged sexual assault of Ms. Stroup occurred at a private off-campus apartment, and not in relation to any fraternity event. Under these circumstances, the Court cannot find that KSU had 'substantial control' over the context of the assault.") (footnotes omitted); *Samuelson v. Oregon State Univ.*, 162 F. Supp. 3d 1123, 1132 (D. Or. 2016), *aff'd*, 725 F. Appx. 598 (9th Cir. 2018) ("OSU had no control over an off-campus party at an apartment that simply happened to be located in the same city as the university. And Ms. Samuelson's rape occurred not on campus, where the OSU might exert some control over the comings and goings of students or guests, but at another off-campus apartment.").

In the instant case, Plaintiff's two alleged sexual assaults did not occur within a University-related educational program or activity or at locations where the University had any supervision or control. Although Plaintiff asserts that she earlier went to fraternity events, Plaintiff cannot dispute that she voluntarily left those fraternity events and was no longer participating in a University-related program or activity or on premises over which the University had any control at the time of the alleged sexual assaults. With respect to Nicholas

11

Wayman, Plaintiff alleges that she left the Sigma Chi fraternity party at 1:15 a.m.; walked to her car with her female friend; snorted her own cocaine in her car for a "pick me up"; drove and dropped her female friend off; changed her clothes in her car to get more comfortable; and then contacted Mr. Wayman (who was not a member of Sigma Chi fraternity) on Snapchat and requested him to take her home.  Mr. Wayman agreed to take Plaintiff to his parent's off-campus residence in Arlington, where he allegedly sexually assaulted her after 2:30 a.m. in the morning. Defendant Material Facts, ¶¶ 3-26.  Likewise, with respect to Raymond Tate, Plaintiff asserts that she went to a fraternity fundraising event at a local bar.  Plaintiff voluntarily left the fraternity event with a female friend and Mr. Tate (who was not a member of the fraternity), and Plaintiff's friend allowed Plaintiff and Mr. Tate to sleep over at the friend's off-campus apartment, where Mr. Tate allegedly sexually assaulted Plaintiff.  *Id.*, ¶¶ 27-38.  Under these undisputed factual circumstances, the University did not have substantial control over the context of the two alleged sexual assaults and therefore cannot be liable to Plaintiff under Title IX.

## **CONCLUSION**

For the foregoing reasons, the Court should grant Defendant University's motion to dismiss or, in the alternative, motion for summary judgment and dismiss Plaintiff's Title IX claim with prejudice; and such other relief as the Court deems appropriate.

Respectfully submitted,

**HERBERT H. SLATERY III**
**ATTORNEY GENERAL AND REPORTER**

s/ David M. Rudolph
David M. Rudolph, BPR #13402
Assistant Attorney General
Robert W. Wilson, BPR #34492
Assistant Attorney General
Office of the Attorney General and Reporter
40 South Main Street, Suite 1014
Memphis, TN 38103-1877

Phone: (901) 543-4162
Email: David.Rudolph@ag.tn.gov
Email: Robert.Wilson@ag.tn.gov

Matthew D. Janssen, BPR #035451
Assistant Attorney General
Office of the Attorney General and Reporter
UBS Tower, 18th Floor
P.O. Box 20207 Nashville, TN 37202-0207
Phone:  (615) 741-7087
Matthew.Janssen@ag.tn.gov

**CERTIFICATE OF SERVICE**

      I hereby certify that on March 19, 2019, a copy of the foregoing document was filed electronically.  Notice of this filing will be sent by operation of the Court's ECF system to:

Brice M. Timmons, Esq.
BLACK, MCLAREN, JONES,
 RYLAND & GRIFFEE, P.C.
530 Oak Court Drive, Suite 360
Memphis, Tennessee 38117
btimmons@blackmclaw.com

                                  s/ David M. Rudolph