**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

---

JANE DOE,

     Plaintiff,

v.                                                              Case No. 2:18-cv-2032-MSN-cgc
                                                                JURY DEMAND

THE UNIVERSITY OF MEMPHIS,

     Defendant.

---

## ORDER GRANTING DEFENDANT UNIVERSITY OF MEMPHIS' MOTION FOR SUMMARY JUDGMENT

---

Before the Court is Defendant University of Memphis' Motion for Summary Judgment ("Motion") (ECF No. 83) filed August 21, 2020. Along with its Motion, Defendant filed a Memorandum in Support (ECF No. 83-1), a Statement of Material Facts ("Defendant's SMF") (ECF No. 83-2), and several declarations and exhibits (ECF Nos. 83-3 through 83-11). After receiving three extensions of time, Plaintiff filed her response on November 20, 2020 (ECF No. 96). In support of her response, Plaintiff also filed her affidavit (ECF No. 99 (sealed)), along with her response to Defendant's SMF and her Statement of Additional Facts ("Plaintiff's SAF") (ECF No. 100). Defendant filed a reply December 4, 2020 (ECF No. 101). For the reasons set forth below, Defendant's Motion is **GRANTED**.

## BACKGROUND

This is an action against the University of Memphis ("Defendant" or "University") for violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*. ("Title IX"). Plaintiff, a former student at the University, alleges she was raped twice off campus by two

different fellow University students over the course of three weeks.  She timely reported both alleged assaults to the University.  She alleges that she was subject to harassment and retaliation on campus in the weeks and months subsequent to the alleged off-campus assaults.

## A.    <u>Procedural</u>

On January 11, 2018, Plaintiff filed her initial Complaint against Defendant alleging violations of Title IX and state law claims.  (ECF No. 1.)  On March 5, 2018, Defendant filed its first motion to dismiss.  (ECF No. 14.)  Thereafter, on March 21, 2018, Plaintiff filed an Amended Complaint, which maintained her Title IX claims while removing her state law claims. (ECF No. 17.)  As a result of the filing of the Amended Complaint, the Court denied Defendant's first motion to dismiss as moot.  (ECF No. 48.)   On April 9, 2018, Defendant filed its second motion to dismiss. (ECF No. 19.) On February 6, 2019, Defendant filed a motion for summary judgment. (ECF No. 31.) On March 15, 2019, Plaintiff moved to amend her complaint for a second time, which this Court granted on March 18, 2019.  (ECF Nos. 43 & 44.)  On March 19, 2019, Plaintiff filed her Second Amended Complaint. (ECF No. 45.)  As a result of the Second Amended Complaint, the Court denied as moot Defendant's second motion to dismiss and its motion for summary judgment.  (ECF No. 48.)  Thereafter, Defendant filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, which the Court heard oral arguments on July 2, 2019.  (ECF Nos. 46, 66.)  The Court denied that motion on November 27, 2019 (ECF No. 68).  On August 21, 2020, Defendant filed its Motion for Summary Judgment now before the Court.

B.      **Factual**

As an initial matter, the Court must address Plaintiff's response to Defendant's SMF and also Defendant's objections to Plaintiff's SAF.  Local Rule 56.1 provides:

> [a]ny party opposing the motion for summary judgment must respond to each fact set forth by the movant by either: (1) agreeing that the fact is undisputed; (2) agreeing that the fact is undisputed for the purpose of ruling on the motion for summary judgment only; or (3) demonstrating that the fact is disputed.

Local Rule 56.1(b).  That rule further states that "[e]ach disputed fact must be supported by a specific citation to the record . . . ."  *Id.*

In her response to Defendant's SMF, Plaintiff alleges that the declarations submitted by Defendant contain "'factual' allegations that are hearsay and thus are inadmissible in evidence at trial." (ECF No. 100 at PageID 1064–65.)  Plaintiff does not, however, specify which "factual allegations" she believes are hearsay.  Plaintiff admits the facts in the first two paragraphs of Defendant's SMF, and thereafter responds to Defendant's 54 other statements of fact saying only, "Plaintiff objects to any assertion(s) in the Declarations relied upon by Defendant as fact." (*See* ECF No. 100 at PageID 1066–79.)  Not only does Plaintiff not provide specificity or citations to the record in her response to Defendant's SMF, several of the facts she objects to appear to be the same or substantially similar to factual allegations in her Second Amended Complaint. *Compare* Defendant's SMF ¶ 3 *with* Second Amended Complaint ¶ 19; Defendant's SMF ¶ 4 *with* Second Amended Complaint ¶ 47; Defendant's SMF ¶ 15 *with* Second Amended Complaint ¶¶ 79–84.

"This Court is not required to sift through pleadings to determine if the non-moving party has sufficiently responded to the statement of undisputed material facts."  *Akines v. Shelby*

*County Gov't*, 512 F. Supp. 2d 1138, 1147 (W.D. Tenn. 2007) (citing *Featherston v. Charms Co.*, No. 04-2157, 2005 WL 1364621, at *1 n. 1 (W.D. Tenn. May 10, 2005). Plaintiff has failed to respond to Defendant's SMF as required by the Local Rules, and therefore, this Court will consider Defendant's SMF as having been admitted by Plaintiff. *See id.*; *see also Baxter Bailey Investments, Inc. v. Mars Petcare US, Inc.*, No. 11-2860, 2012 WL 1965612, at *2 (W.D. Tenn. May 31, 2012).

Turning to Plaintiff's SAF, Defendant either disputes or objects to all Plaintiff's proffered additional facts. (*See* ECF No. 101-1 at PageID 1095–105.) Defendant objects that most of the paragraphs in Plaintiff's SAF are argumentative, conclusory, speculative, or contain improper lay witness expert opinions. (*See id.*) This Court agrees, and it will not consider Plaintiff's SAF to the extent she provides conclusions, arguments, and lay opinions rather than facts. However, Defendant also responds that it disputes the first two paragraphs in Plaintiff's SAF, citing to paragraph three in its SMF. (*See* ECF No. 101-1 at PageID 1095.) These two paragraphs (57 and 58) contain excerpts from what Plaintiff says is Defendant's "Title IX policy." (*See id.*) Paragraph three in Defendant's SMF (cited in response) provides that Defendant has a Sexual Misconduct and Domestic Violence Policy ("Sexual Misconduct Policy"), which Defendant attached as "Exhibit A" to the Declarations of Kenneth Anderson, Darren Wibberding, and Hai Nguyen. (*See* ECF No. 83-2 at PageID 665.) When comparing the excerpts in Plaintiff's SAF from the "Title IX policy" to the attachments submitted by Defendant as the "Sexual Misconduct Policy," Plaintiff appears to have accurately provided the excerpted portions of the document. It is therefore unclear to this Court what exactly Defendant disputes other than the semantics of calling it a "Title IX policy" rather than a "Sexual Misconduct and Domestic Violence Policy." Similar to Plaintiff "disputing" facts in Defendant's SMF that were the same or substantially

similar to factual allegations in her Second Amended Complaint, this Court is left with the impression that there is no genuine dispute regarding these facts. Instead, Defendant's objections to these paragraphs appear to be merely nettlesome, ostensibly to Plaintiff, but in reality, to the Court as well.

Accordingly, with consideration of the foregoing, the following facts are undisputed for purposes of summary judgment unless otherwise noted.

Plaintiff alleged that she was sexually assaulted by a fellow student, Nicholas Wayman ("Mr. Wayman"), in the early morning hours of Saturday, April 1, 2017. (ECF No. 100 at PageID 1065.) The sexual assault by Mr. Wayman occurred at a private residence. (*Id.*) The following Monday morning, April 3, 2017, Plaintiff first reported the alleged sexual assault in person to Darren Wibberding, the University Assistant Director in the Office of Student Conduct. (*Id.* at PageID 1066.) In the initial interview, Mr. Wibberding interviewed Plaintiff about the factual circumstances regarding her alleged sexual assault by Mr. Wayman. (*Id.*) According to Plaintiff, Mr. Wibberding asked her "what kind of panties" she was wearing along with "other degrading questions." (ECF No. 99 (sealed) at PageID 1061.) For his part, Mr. Wibberding states he did not ask any inappropriate questions of Plaintiff and would have asked the same questions regarding clothing and undergarments if Plaintiff was a male alleging sexual assault by another student. (ECF No. 83-5 at PageID 821.)

After he finished interviewing Plaintiff, Mr. Wibberding reported the incident to the Office of Institutional Equity (the "OIE") as required by Defendant's Sexual Misconduct Policy. (ECF No. 100 at PageID 1067.) Mr. Wibberding escorted Plaintiff to the OIE at that time. (*Id.*) Plaintiff then lodged a complaint with the OIE that same day regarding her sexual assault allegations against Mr. Wayman. (*Id.*) According to Defendant, during the initial discussion

with the OIE, Plaintiff requested to the OIE that her Title IX complaint against Mr. Wayman be held in abeyance pending the outcome of a criminal case against him related to the alleged sexual assault.  (ECF No. 83-9 at PageID 928.)  While not denying that she requested the investigation be held in abeyance, according to Plaintiff, Defendant's Title IX coordinator told her that, if he investigated the alleged assault by Mr. Wayman, such investigation could imperil any criminal prosecution.  (ECF No. 99 (sealed) at PageID 1061.)

On April 4, 2017, the day after Plaintiff reported the alleged sexual assault to Defendant, Mr. Wibberding delivered an interim measures letter to Mr. Wayman, which contained provisions for a no-contact directive, class removal and reassignment, restrictions on campus access, and a restriction on activities.  (ECF No. 83-5 at PageID 821; ECF No. 83-6; ECF No. 100 at PageID 1067.)  To Defendant's knowledge, Mr. Wayman complied with and never violated the no-contact directive as to Plaintiff in any manner.  (ECF No. 100 at PageID 1068.)  Mr. Wayman was also prohibited from attending the two classes he and Plaintiff had together and was required to complete those classes via directed studies off campus.  (ECF No. 100 at PageID 1068.)  Although Defendant has submitted evidence that Mr. Wayman was prohibited from attending the classes he had with Plaintiff, Plaintiff alleges in her affidavit that the "Title IX Coordinator" told her she could "either attend classes with [her] rapist or drop out."  (ECF No. 99 (sealed) at PageID 1061.)

The interim measures also restricted Mr. Wayman from accessing Defendant's campus other than to attend his other three classes in which Plaintiff was not enrolled.  (*Id.*)  Mr. Wayman was further instructed to cease attendance and involvement in any co-curricular activities and student organizations pending completion of the OIE's investigation.  (ECF No. 83-6 at PageID 854.) At Plaintiff's request, Defendant also provided escort services by a female

6

campus police officer for her April 12, 2017 counseling session at University Counseling Services.  (ECF No. 100 at PageID 1068.)  This was the only time Plaintiff requested escort services.  (*Id.*)  In her affidavit, Plaintiff alleges that Defendant denied her accommodations other than a parking pass.  (ECF No. 99 (sealed) at PageID 1062.)  However, Plaintiff did not specify or submit evidence regarding what other accommodations she wanted or requested.  (*See id.*)

On April 21, 2017, approximately three weeks after the alleged assault by Mr. Wayman, Plaintiff alleged she was sexually assaulted by another fellow student, Raymond Tate ("Mr. Tate").  The alleged sexual assault by Mr. Tate occurred at a private residence off campus.  (*Id.*) Plaintiff reported the assault to the Memphis Police Department, which then reported the assault to Derek Myers, the Interim Chief of University Police.  (ECF No. 83-9 at PageID 932–33.) Michael Washington ("Mr. Washington"), Director of the OIE, and Hai Phyong Nguyen, a Coordinator in the OIE, contacted Plaintiff that same day, but Plaintiff declined to meet and immediately file an OIE complaint.  (ECF No. 83-9 at PageID 933.)  Plaintiff verbally requested the matter be held in abeyance and confirmed she felt safe despite Mr. Tate's alleged assault. (*Id.*)  At that time, Plaintiff indicated to the OIE that it would be nine to 10 months before the results of her rape kit came back for prosecution.  (ECF No. 83-9 at PageID 934.)

On May 1, 2017, Plaintiff met with the OIE to discuss the allegations related to the alleged sexual assault by Mr. Tate.  (ECF No. 100 at PageID 1070.)  The OIE sent Mr. Tate notice of Plaintiff's complaint against him that afternoon.  (*Id.*)  Mr. Washington interviewed Mr. Tate via telephone on May 12, 2017 regarding the alleged sexual assault, and Mr. Tate denied Plaintiff's allegations against him.  (*Id.*)

On May 13, 2017, Plaintiff complained that Mr. Wayman had violated the campus access restriction and the restriction on student organization activity by attending a fraternity initiation

event on campus on May 12, 2012, and by playing basketball at a fraternity recruitment event at an off-campus location.  (ECF No. 100 at PageID 1070.)  On May 19, 2017, Mr. Wibberding delivered a letter to Mr. Wayman on behalf of Defendant regarding the potential interim measures violations complained of by Plaintiff.  (ECF No. 100 at PageID 1070.)  Mr. Wayman admitted the violations of the interim measures, and on June 1, 2017, Defendant issued an interim suspension of Mr. Wayman effective June 1, 2017 through August 27, 2017.  (ECF No. 100 at PageID 1070.)

During this time period, there was a vandalism incident involving Plaintiff's car.  On May 30, 2017, Plaintiff emailed Ms. Nguyen and mentioned that her car may have been vandalized on May 29, 2017, either in an on-campus parking lot or at an off-campus restaurant. (ECF No. 100 at PageID 1071; ECF No. 83-10 at PageID 996.)  Ms. Nguyen responded to Plaintiff's email asking for a additional details about the car vandalism and asking if Plaintiff could confirm that the vandalism occurred at the on-campus parking lot.  (ECF No. 83-10 at PageID 995.)  Ms. Nguyen suggested that one option may be for Plaintiff to park in a different on-campus parking lot, and Ms. Nguyen told Plaintiff to let her know if she wished to change parking lots.  (ECF No. 83-10 at PageID 995.)  Plaintiff responded to Ms. Nguyen indicating she had asked around, but that no one knew any additional information about the vandalism to her car.  (ECF No. 83-10 at PageID 994.)  Plaintiff stated she had also checked for security cameras, but that there were none at either the on-campus parking lot or the off-campus restaurant.  (*Id.*) Plaintiff indicated she believed that the vandalism "more than likely occurred" at the off-campus restaurant, and indicated she was "okay" continuing to park in her current on-campus parking lot. (*Id.*)

On June 1, 2017, in regards to the incident with Mr. Tate, Plaintiff emailed Ms. Nguyen stating she wanted "to go forward with the second case" since it would be "so long before he is arrested." (ECF No. 100 at PageID 1072; ECF No. 83-10 at PageID 990.) On June 4, 2017, Plaintiff agreed via email to the issuance of a no-contact directive for Mr. Tate. (ECF No. 100 at PageID 1072; ECF No. 83-9 at PageID 935.) An interim measures letters was then issued to Mr. Tate on June 6, 2017, which included provisions for a no-contact directive. (ECF No. 100 at PageID 1072; ECF No. 83-9 at PageID 935; ECF No. 83-10 at PageID 992.) To Defendant's knowledge, Mr. Tate complied with and never violated the no-contact directive in any manner. (ECF No. 100 at PageID 1072.)

On August 3, 2017, the Shelby County Grand Jury indicted Mr. Wayman on charges of Rape and Sexual Battery. (ECF No. 100 at PageID 1073.) Plaintiff is identified by her real name in the indictment. (ECF No. 100 at PageID 1073.) Defendant was not aware of the indictment until later that month. (ECF No. 100 at PageID 1073.)

On August 4, 2017, Plaintiff emailed the OIE to follow up on her complaints and to request a new parking pass prior to the beginning of the 2017 fall semester. (ECF No. 100 at PageID 1073.) Melanie Murry ("Ms. Murry"), General Counsel for Defendant, responded to Plaintiff's email and told her Defendant was working on getting her a parking pass for the semester and inquired if Plaintiff wanted the pass for the same parking lot as before. (ECF No. 83-4 at PageID 717.) Ms. Murry also asked Plaintiff to send her schedule for the fall semester so that Ms. Murry could make sure Plaintiff was not in any classes with Mr. Wayman or Mr. Tate. (ECF No. 83-4 at PageID 717.)

On August 24, 2017, Ms. Murry and new OIE Director Kenneth Anderson ("Mr. Anderson") met with Plaintiff to follow up on the status of the Title IX investigations, interim

measures, and requests for additional accommodations prior to the start of the 2017 fall semester.[1]  (ECF No. 100 at PageID 1073.)

For the 2017 fall semester, Defendant continued to implement the previous no-contact directives it had previously issued at to Mr. Wayman and Mr. Tate.  (ECF No. 100 at PageID 1073–74.)  Additional restrictions were also implemented as to Mr. Wayman in regards to his access to Clement Hall, where Plaintiff and he both had classes.  (ECF No. 100 at PageID 1074.)  Mr. Wayman was not allowed to enter Clement Hall except to attend his philosophy class, and he was given specific time, entry, and exiting instruction to avoid contact with Plaintiff.  (ECF No. 100 at PageID 1074.)

On October 10, 2017, an article with the headline "Student Raped Twice in 20 Days: Alleged Assailants Remain U of M Students," was published in the student newspaper, *The Daily Helmsman*.  (ECF No. 100 at PageID 1074.)  The article identified Plaintiff by use of the pseudonym "Caroline."  (ECF No. 100 at PageID 1074.)  Two days later, on October 12, 2017, Defendant became aware of a Twitter account "Free Nick Wayman" published by Twitter user ID "HoesBeLyin_."  (ECF No. 100 at PageID 1075.)  The Twitter account did not identify who was responsible for the account or its posts, and at that time, Defendant was unable to discern whether the account could be attributed to a student of Defendant.  (ECF No. 100 at PageID 1075.)  Nevertheless, Defendant reached out to Mr. Wayman's former fraternity, Lambda Chi Alpha, regarding the account, and it was deleted that same day.  (ECF No. 100 at PageID 1075; ECF No. 83-7 at PageID 886.)  Although Defendant was aware of the Twitter account, Plaintiff never complained to Defendant regarding the Twitter account.  (ECF No. 100 at PageID 1075.)

---

[1] Defendant's SMF refers to Mr. Anderson as "Kenneth Washington" in ¶ 33, and also mistakenly uses refers to "OIE Director Washington" later in its SMF when referring to testimony set forth in Mr. Anderson's declaration (*see* ¶ 44 of Defendant's SMF).

On October 13, 2017, Defendant received complaints from Plaintiff and Plaintiff's roommate that another student, Lauren Olson ("Ms. Olson"), had revealed Plaintiff's real first name on Twitter.  (ECF No. 100 at PageID 1076.)  Plaintiff and her roommate were concerned that Ms. Olson's revelation put Plaintiff "at risk."  (ECF No. 100 at PageID 1076.)

On October 18, 2017, Mr. Anderson interviewed Plaintiff regarding the sexual assault allegations against Mr. Tate.  (ECF No. 100 at PageID 1076.)  On December 6, 2017, Mr. Anderson interviewed Plaintiff regarding the sexual assault allegations against Mr. Wayman.  (ECF No. 100 at PageID 1077.)

On December 14, 2017, Plaintiff reported to Mr. Anderson by email that her car had been vandalized on campus on December 13, 2017.  (ECF No. 100 at PageID 1077.)  This incident of alleged vandalism involved spaghetti sauce smeared on the rear door panel on the driver's side of Plaintiff's vehicle.  (ECF No. 83-3 at PageID 684; ECF No. 110 at PageID 1077.)  Plaintiff did not notice the vandalism, however, until the next day, and she was unable to identify any alleged perpetrators.  (ECF No. 100 at PageID 1077.)  Plaintiff washed the spaghetti sauce off her vehicle, and there was no damage to her car.  (ECF No. 100 at PageID 1077.)

On January 10, 2018, Plaintiff sent Ms. Nguyen with the OIE an email with nine requests for interim measures and other accommodations for the 2018 spring semester.  (ECF No. 100 at PageID 1077.)  Later in the email correspondence, Plaintiff states that the "criminal process" was moving forward "with both cases," and she inquired whether an interim suspension would be possible.  (ECF No. 83-4 at PageID 764.)  Ms. Murry responded to Plaintiff's email and asked for additional details regarding the criminal case in regards to Mr. Tate, saying that Defendant could use information regarding the prosecution of Mr. Tate to evaluate what action Defendant could take in regards to Mr. Tate.  (ECF No. 83-4 at PageID 763.)  At that time, Plaintiff was

represented by counsel, and Ms. Murry also copied counsel in her response to Plaintiff's email. (ECF No. 83-4 at PageID 763.)   Plaintiff's counsel responded to Ms. Murry's email and confirmed the case against Mr. Tate was moving forward to the grand jury.  (ECF No. 83-4 at PageID 763.)

By letter dated January 11, 2018, Defendant's Associate Vice President for Student Affairs and Dean of Students, Justin Lawhead ("Mr. Lawhead"), issued an interim suspension of Mr. Tate as an interim measure for the 2018 spring semester.  (ECF No. 100 at PageID 1078; ECF No. 83-4 at PageID 768.) Also by letter dated January 11, 2018, Mr. Anderson issued a no-trespass directive to Mr. Wayman as an interim measure for the 2018 spring semester.  (ECF No. 100 at PageID 1078; ECF No. 83-4 at PageID 770.)  The no-trespass directive for Mr. Wayman meant he was not allowed to "visit the University in any way, without prior express approval from University Police Services."  (ECF No. 83-4 at PageID 770.)

On January 12, 2018, Mr. Anderson responded to Plaintiff's email regarding her nine requests for interim measures.  (ECF No. 100 at PageID 1078.)  Mr. Anderson responded that Plaintiff's requests as to certain measures regarding class schedules, access to the gym, and access to the University Center should not be an issue given the no-trespass directive for Mr. Wayman and the interim suspension issued for Mr. Tate for the 2018 spring semester.  (ECF No. 83-4 at PageID 775.)  Mr. Anderson stated that several of Plaintiff's other requests, including a police escort and additional time for assignments, were more appropriately directed to other University departments, such as campus police and the disability resources office.  (*Id.*)  Mr. Anderson provided Plaintiff the information for these other departments, and specifically offered to assist Plaintiff in connecting with the disability resources office.  (*Id.*)

On March 15, 2018, the OIE issued its investigative report as to Plaintiff's allegations against Mr. Wayman. (ECF No. 100 at PageID 1078.) Mr. Wayman did not appeal the OIE investigator determination. (ECF No. 100 at PageID 1078.) On April 27, 2018, Mr. Lawhead issued a three-year final suspension of Mr. Wayman. (ECF No. 100 at PageID 1078.)

On May 10, 2018, the Shelby County Grand Jury indicted Mr. Tate on charges of Rape and Sexual Battery. (ECF No. 100 at PageID 1079.) On December 14, 2018, the OIE issued its investigative report as to Plaintiff's allegations against Mr. Tate. (ECF No. 100 at PageID 1079.) Mr. Tate did not appeal the OIE investigator determination. (*Id.*) On February 16, 2019, Mr. Lawhead issued a three-year final suspension of Mr. Tate. (*Id.*)

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 permits a party to move for summary judgment — and the Court to grant summary judgment — "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting the presence or absence of genuine issues of material facts must support its position either by "citing to particular parts of materials in the record," including depositions, documents, affidavits or declarations, stipulations, or other materials, or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). In ruling on a motion for summary judgment, the Court must view the facts contained in the record and all inferences that can be drawn from those facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001). The Court

cannot weigh the evidence, judge the credibility of witnesses, or determine the truth of any matter in dispute. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

The moving party bears the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge this burden either by producing evidence that demonstrates the absence of a genuine issue of material fact or simply "by 'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. Where the movant has satisfied this burden, the nonmoving party cannot "rest upon its . . . pleadings, but rather must set forth specific facts showing that there is a genuine issue for trial." *Moldowan v. City of Warren*, 578 F.3d 351, 374 (6th Cir. 2009) (citing *Matsushita*, 475 U.S. at 586; Fed. R. Civ. P. 56).  The nonmoving party must present sufficient probative evidence supporting its claim that disputes over material facts remain and must be resolved by a judge or jury at trial. *Anderson*, 477 U.S. at 248–49 (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253 (1968)); *see also White v. Wyndham Vacation Ownership, Inc.*, 617 F.3d 472, 475–76 (6th Cir. 2010).  A mere scintilla of evidence is not enough; there must be evidence from which a jury could reasonably find in favor of the nonmoving party.  *Anderson*, 477 U.S. at 252; *Moldowan*, 578 F.3d at 374.

The Court's role is limited to determining whether there is a genuine dispute about a material fact, that is, if the evidence in the case "is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.  Such a determination requires that the Court "view the evidence presented through the prism of the substantive evidentiary burden" applicable to the case. *Id.* at 254.  Thus, if the plaintiff must ultimately prove its case at trial by a preponderance of the evidence, on a motion for summary judgment the Court must

14

determine whether a jury could reasonably find that the plaintiff's factual contentions are true by a preponderance of the evidence. *See id.* at 252–53.

Finally, if the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 323. The Court must construe Rule 56 with due regard not only for the rights of those "asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury," but also for the rights of those "opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis." *Id.* at 327.

## DISCUSSION

### I.    Title IX Deliberate Indifference Claim

Title IX mandates that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). In *Gebser v. Lago Vista Independent School District*, the Supreme Court found that institutional liability under Title IX exists in instances of known sexual harassment of a student by faculty or employees of the federally funded institution when the school is "deliberately indifferent" to the harassment. 524 U.S. 274, 292 (1998). A year later, the Court extended the reasoning of *Gebser* to known student-on-student sexual harassment. *See Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 653–54 (1999). "By design and effect, the *Davis* Court's Title IX private cause of action against a school for its response to student-on-student sexual harassment is a 'high standard' that applies only 'in certain limited circumstances.'" *Kollaritsch v. Mich. State Univ. Bd. of Trs.*, 944 F.3d 613, 619 (6th Cir. 2019) (citing *Davis*, 526 U.S. at 643).

Institutions may be held liable when a plaintiff demonstrates the following elements: (1) sexual harassment so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school, (2) the funding recipient had actual knowledge of the sexual harassment, and (3) the funding recipient was deliberately indifferent to the harassment. *Davis*, 526 U.S. at 650; *Kesterson v. Kent State Univ.*, 967 F.3d 519, 527 (6th Cir. 2020).   As the Sixth Circuit recently clarified, this formulation, "clearly has two separate components, comprising separate-but-related torts by separate-and-*un*related tortfeasors: (1) 'actionable harassment' by a student, and (2) a deliberate-indifference intentional tort by the school." *Kollaritsch*, 944 F.3d at 619–20 (internal citations omitted) (emphasis in original).   Critically, the "*Davis* formulation requires that the school had actual knowledge of some actionable sexual harassment and that the school's deliberate indifference to it resulted in further actionable harassment of the student-victim" *Id.* at 620.

In order to be "actionable harassment," the harassment must be severe, pervasive, and objectively offensive.   *Kollaritsch*, 944 F.3d at 620.   For harassment to be severe under this standard, it must be more than "simple acts of teasing and name calling."   *Id.*   Teasing and name calling are not considered "severe" harassment, "even where these comments target differences in gender."   *Id.*   To be pervasive, the harassment must be "systemic" or "widespread," and importantly, there must "*multiple* incidents of harassment; one incident of harassment is not enough."   *Id.* (emphasis in original).   As the Sixth Circuit noted, the "*Davis* Court hypothesized that a single incident could be sufficiently *severe* that it would result in the articulated injury— and we do not doubt that a sexual assault would be such a severe incident—but the Court held that a single incident would nonetheless fall short of Title IX's requirement of 'systemic' harassment."   *Id.*   To be objectively offensive the behavior must be "offensive to a reasonable

person under the circumstances, not merely offensive to the victim, personally or subjectively." *Id.* at 621.

The Supreme Court also made clear in *Davis* that Title IX liability is limited to circumstances where the school "exercises substantial control over both the harasser and the context in which the known harassment occurs." *Davis*, 526 U.S. at 645.  In other words, "[a] recipient cannot be directly liable for its indifference where it lacks the authority to take remedial action." *Id.* at 644.

After establishing "actionable student-on-student harassment," the plaintiff must also prove "four elements of a deliberate-indifference-based intentional tort: (1) knowledge, (2) an act, (3) injury, and (4) causation." *Kollaritsch*, 944 F.3d at 621.

"'Knowledge' means that the defendant school had 'actual knowledge' of an incident of actionable sexual harassment that prompted or should have prompted a response." *Id.*

The "act" is the school's response, which must demonstrate the school was deliberately indifferent "to the foreseeable possibility of *further* actionable harassment of the victim." *Id.*  An institution is deliberately indifferent "only where [its] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648.  Title IX does not require that an institution "remedy" peer harassment, but simply that it "respond to known peer harassment in a manner that is not clearly unreasonable." *Id.* at 648–49.  However, the Sixth Circuit has cautioned schools against repeatedly relying on certain methods when the school has knowledge that its attempts to address the harassment are ineffective.  *See Patterson v. Hudson Area Sch.*, 551 F.3d 438, 449 (6th Cir. 2009); *Vance v. Spencer Cnty. Pub. Sch. Dist.*, 231 F.3d 253, 257 (6th. Cir. 2000).

The "injury" means "deprivation of 'access to the educational opportunities or benefits provided by the school.'" *Kollaritsch*, 944 F.3d at 622.

Finally, "'Causation' means the 'Act' caused the 'Injury,' such that the injury is attributable to the post-actual-knowledge *further* harassment . . . ." *Id.* "*Davis* requires a showing that the school's deliberate indifference subjected its students to *harassment*, necessarily meaning further *actionable* harassment." *Id.* (internal quotation marks omitted).

In its prior Motion to Dismiss or, in the Alternative, Motion for Summary Judgment (ECF No. 46), Defendant argued that it had no Title IX liability because Plaintiff's alleged assaults occurred off campus. Plaintiff responded that she was not suing for the off-campus assaults, but for Defendant's deliberate indifference and the hostile environment on campus after the assaults:

> This defense is wide of the mark in that Plaintiff has not sued Defendant for her rapes. She has sued Defendant for its deliberate indifference to her harassment and liability to harassment following those rapes, and for fostering a hostile environment on campus that resulted from both the rapes themselves and her reports of the rapes to the police and the University.

(ECF No. 60 at PageID 461.) In its Order on Defendant's motion, this Court rejected Defendant's attempt to draw a bright-line rule as to off-campus assaults and noted that "Plaintiff's Second Amended Complaint provide[d] detailed factual allegations of harassment occurring in contexts that Defendant appears to control, even though the alleged sexual assaults did not ultimately occur in a context within Defendant's control." (ECF No. 68 at PageID 540.) Now, after consideration of the entire record in this matter, and in the absence of additional facts or proof by Plaintiff, this Court finds that Defendant's response to Plaintiff's complaints of harassment was not deliberately indifferent. In addition, Plaintiff cannot show that she was subjected to further "actionable harassment" under Title IX.

The standard for deliberate indifference set forth by the Supreme Court in *Davis* is a "clearly unreasonable response in light of the known circumstances." *Davis*, 526 U.S. at 648. No particular response is mandated, and schools are not required to "purge" themselves of all actionable peer harassment. *Davis*, 526 U.S. at 642. When a school "has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate that behavior." *Vance*, 231 F.3d at 261. That a school's actions are ineffective, however, is not enough; instead, the inquiry is whether the school's efforts "amounted to 'an official decision . . . not to remedy the violation.'" *Foster v. Bd. Of Regents of Univ. of Mich.*, 982 F.3d 960, 967 (6th Cir. 2020) (quoting *Davis*, 526 U.S. at 648).

Even though Plaintiff alleges she is not suing Defendant for her alleged rapes,[2] Defendant's response to the alleged assaults is the necessary starting point for an analysis of whether Defendant's response was deliberately indifferent. In response to Plaintiff's report of the first alleged assault, Defendant took interim measures against Plaintiff's alleged rapist, which included putting a no-contact order in place, removing Mr. Wayman from the two classes he and Plaintiff had together, restricting Mr. Wayman's access to Defendant's campus, and restricting Mr. Wayman's ability to participate in social activities. These measures, by and large, appeared to be effective. Plaintiff does not allege that Mr. Wayman ever attempted to harass or contact her after these measures were put in place. Further, when Plaintiff reported that she believed Mr. Wayman had violated certain interim measures, Defendant discussed those matters with Mr. Wayman, and ultimately issued Mr. Wayman a temporary suspension when he admitted he had violated the interim measures. Plaintiff does not allege that Mr. Wayman ever again violated any

---

[2] Moreover, the Sixth Circuit has stated that allegations of rape in the pre-actual knowledge period cannot alone show actionable sexual harassment. *Doe v. Univ. of Ky.*, 959 F.3d 246, 251 (6th Cir. 2020).

of the interim measures.   Defendant continued to enforce the interim measures against Mr. Wayman during the course of its investigation, eventually issuing Mr. Wayman a no trespass directive, and then finally issuing Mr. Wayman a three-year suspension upon completion of its investigation.   Was Defendant's response to Plaintiff's alleged assault by Mr. Wayman perfect? No.   But did Defendant's response amount to "an official decision . . . not to remedy the violation"?  Also no.

The same can be said when it comes to Defendant's response to Plaintiff's report of her second alleged assault by Mr. Tate.  Interim measures were put in place; Plaintiff does not allege she suffered further harassment by Mr. Tate; and Mr. Tate was eventually issued a three-year suspension upon completion of Defendant's investigation.  As with Plaintiff's complaint related to the alleged assault by Mr. Wayman, although Defendant's handling of Plaintiff's complaint for the alleged assault by Mr. Tate was not perfect, it also does not demonstrate deliberate indifference.

Plaintiff seems to suggest that, because Defendant's response to the two alleged sexual assaults failed to prevent the University newspaper from publishing a story about the assaults and failed to prevent online bullying of Plaintiff on the social media platform Twitter, Defendant's response was deliberately indifferent.  Putting aside for now whether these instances constitute further actionable harassment, Plaintiff's line of reasoning is akin to strict liability—asking Defendant to predict and prevent harassment by other students not involved in the original incidents and making Defendant liable when it does not do so.  The Court is deeply sympathetic to the ordeal that Plaintiff had to endure in the wake of her alleged assaults, but strict liability is simply not the standard for liability under Title IX.

Also, specifically as to the online bullying via Twitter, the Court notes that when Defendant learned about the Twitter account, it reached out to Mr. Wayman's former fraternity about the account, and the account was removed that same day.  As discussed below, this Court questions whether harassment on Twitter is within a context controlled by Defendant, but even if it were, Defendant's actions do not demonstrate deliberate indifference.  In fact, just the opposite.  Defendant acted immediately, reaching out about the account the day it learned of it.

It seems from her response that Plaintiff wanted Defendant to take some remedial action as to the Lambda Chi Alpha fraternity as a whole in response to the two alleged assaults. However, as the Supreme Court explained in *Davis*, a Title IX plaintiff has no right to insist on "particular disciplinary action[s]."  *Davis*, 526 U.S. at 648.  Additionally, Plaintiff does not identify what Defendant should have done differently.  Of course, what Defendant could have done differently is not the test, but "it's still worth asking the question because, if the claimant can't identify a better approach, it follows that no deliberate indifference occurred." *Foster*, 982 F.3d at 968.

Accordingly, Defendant is entitled to summary judgment on Plaintiff's Title IX deliberate indifference claim because Defendant was not deliberately indifferent to Plaintiff's reports of sexual harassment.

Additionally, Defendant is entitled to summary judgment because Plaintiff has not shown that she was subjected to some further incident of actionable sexual harassment.  As the Sixth Circuit recently clarified, "*Davis* requires a showing that the school's deliberate indifference subject[ed] its students to *harassment*, necessarily meaning further actionable harassment." *Kollaritsch*, 944 F.3d at 622.  In her response to Defendant's Motion, Plaintiff alleges the

following acts of further actionable harassment that she says she suffered because of Defendant's deliberate indifference:

(1)     The continued presence of both Mr. Wayman and Mr. Tate on campus, which caused "severe exacerbation of her post-traumatic stress disorder and rape trauma syndrome" (ECF No. 96 at PageID 1034);

(2)     Vandalism of her car (*id.*);

(3)     Publication of an article in the school newspaper (*id.*);

(4)     Non-specific "harassment" and "hostility" directed towards her online, particularly on Twitter (*id.* at PageID 1034–35);

(5)     Revelation of her real name by a fellow student on Twitter (*id.*);

(6)     Participation in extracurricular activities by one of her alleged attackers, which forced her to withdraw from those extracurricular activities (*id.* at PageID 1035).

First, although this Court understands why potentially encountering Mr. Wayman or Mr. Tate on campus caused Plaintiff anxiety, this generalized fear or anxiety itself does not constitute further "actionable harassment" under Title IX.  *See Kollaritsch*, 944 F.3d at 624–25; *M.D. by and through Deweese v. Bowling Green Indep. Sch. Dist.*, 709 F. App'x 775, 776–78 (6th Cir. 2017).

Second, there is nothing in the record to suggest that either incident of vandalism of Plaintiff's car could constitute further sexual harassment under Title IX.  As to the first incident, Plaintiff provides no details whatsoever about what was done to her car, and hence, there is nothing in the record that would allow this Court to infer that the vandalism to her car was sexual harassment or that it was based on her sex.  The second incident of vandalism involved spaghetti sauce being smeared on Plaintiff's car.  Plaintiff was not present when the spaghetti sauce was

smeared on her car, but instead discovered it the next morning.  Again, nothing about this incident of vandalism suggests is was sexual harassment or that Plaintiff was targeted because of her sex.  In fact, there is nothing in the record, other than Plaintiff's own speculation, to suggest these incidents were anything more than random bad luck.

Plaintiff's allegation regarding the newspaper article is similarly devoid of any facts that would indicate it was actionable sexual harassment.  The newspaper article identified Plaintiff by a pseudonym, and Plaintiff provides no other details that would allow this Court to infer that the article was objectively offensive.  Moreover, a single article does not rise to the level of pervasiveness necessary to impose liability under Title IX.

The allegations regarding harassment and name calling on Twitter suffer dual detriments—they are not severe, and they did not occur in a context controlled by Defendant. Nothing in the record indicates that the harassment on Twitter was more than "simple acts of teasing and name-calling," which the Supreme Court in *Davis* expressly stated was not enough to impose liability under Title IX.  *See Davis*, 526 U.S. at 651.  Additionally, and likely more problematic, is that Defendant can be liable only for harassment that occurs in contexts it controls.  Defendant does not exercise control over postings made on Twitter, and further, Plaintiff has not alleged concrete facts to support that any of the comments made on Twitter were made by students of Defendant (with the exception discussed below).  *See Nungesser v. Columbia Univ.*, 244 F. Supp. 3d 345, 368 (S.D.N.Y. 2017).

Similarly, the revelation of Plaintiff's real name by a fellow student on Twitter did not occur in a context Defendant controls, nor could this single action by a fellow student be said to constitute harassment that is pervasive.

Finally, Plaintiff's inability to participate in extracurricular activities is more accurately described as the requisite "injury" in the Title IX context but is not itself additional harassment. *See Kollaritsch*, 944 F.3d at 622.

Therefore, because Plaintiff has also not shown that she suffered further actionable harassment, Defendant is entitled to summary judgment on her Title IX deliberate indifference claim.

## II.   Title IX Hostile Environment Claim

A hostile environment claim under Title IX "is analogous to a Title VII hostile environment claim." *Doe v. Miami Univ.*, 882 F.3d 579, 590 (6th Cir. 2018) (citing *Doe v. Claiborne Cty., Tenn. by and through Claiborne Cty. Bd. Of Educ.*, 103 F.3d 495, 515 (6th Cir. 1996)).  The "elements to state a supervisory hostile environment claim under Title VII equally apply under Title IX." *Claiborne Cty.,* 103 F.3d at 515.   In order to establish a coworker hostile environment claim under Title VII, the plaintiff must show that "(1) the employee is a member of a protected class; (2) the employee was subjected to unwelcome sexual harassment; (3) the harassment occurred because of the employee's gender; (4) the harassment affected a term, condition, or privilege of employment; and (5) the employer knew, or should have known of the harassment and failed to respond with prompt and appropriate corrective action." *Theus v. GlaxoSmithKline*, 452 F. App'x 596, 600 (6th Cir. 2011) (citing *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 31 (Tenn. 1996)).  "When the harassment is by a supervisor, the fifth element of employer liability is vicariously imposed, but the employer has the benefit of an affirmative defense." *Carr v. United Parcel Serv.*, 955 S.W.2d 832, 838 (Tenn. 1997) (holding elements of a supervisor hostile environment claim are the same as those in a coworker hostile environment claim), *overruled in part by Parker v. Warren Cnty. Util. Dist.*, 2 S.W.3d 170, 176 (Tenn. 1999).

In order to state a Title IX hostile environment claim, a plaintiff must allege her educational experience was "permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive [so as] to alter the conditions of the victim's" educational environment. *Miami Univ.*, 882 F.3d at 590 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)) (alteration in original).

Applying this to the harassment Plaintiff alleges she endured (as set forth above), this Court finds that Plaintiff has failed to support her claim for a hostile environment under Title IX. As discussed above, Plaintiff's first and sixth allegations of "harassment" are not harassment in the Title IX, or Title VII, context. The remaining instances of harassment do not support her hostile environment claim either because there is no indication that such instances were *sexual* harassment or that the harassment occurred because of Plaintiff's gender. Therefore, for the same reasons Plaintiff failed to show further actionable harassment under her Title IX deliberate indifference claim, Plaintiff's claim for a hostile environment under Title IX also fails, and Defendant is entitled to summary judgment on Plaintiff's Title IX hostile environment claim.

## III.    Title IX "Pre-Assault" Claim

In her Second Amended Complaint, Plaintiff contends that Defendant's acts and failures to act "demonstrate a pattern or practice of failing to respond to incidents of sexual harassment that rises to the level of a policy of the University." (ECF No. 45 at PageID 385.) This is referred to as a "pre-assault" claim under Title IX. Defendant argues this claim must be dismissed because Plaintiff fails to sufficiently allege that Defendant possessed actual knowledge of a heightened risk of sexual assault in a specific context or by a specific perpetrator. (ECF No. 83-1 at PageID 661.) In her response to Defendant's Motion, Plaintiff wholly failed to address her pre-assault claim. When a party fails to respond to a motion or argument therein, the Sixth

Circuit has held that the lack of response is grounds for the district court to assume opposition to the motion is waived and grant the motion. *Humphrey v. U.S. Att'y Gen.'s Office*, 279 F. App'x 328, 331 (6th Cir. 2008). Accordingly, this Court grants Defendant summary judgment on Plaintiff's pre-assault claim.

### <u>CONCLUSION</u>

For the reasons set forth above, Defendant University of Memphis' Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED**, this 16th day of July 2021.

*s/ Mark S. Norris*
_____
MARK S. NORRIS
UNITED STATES DISTRICT JUDGE